UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AMY L. A.[1], <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY[2], <br><br> Defendant. | CASE NO. 1:24-CV-343-SJF |

**OPINION and ORDER**

Plaintiff Amy A. ("Ms. A") seeks judicial review of the Social Security Commissioner's decision denying Ms. A's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This Court may enter a ruling based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). [DE 12]. For the reasons discussed below, the Court **REMANDS** the decision of the Commissioner of the Social Security Administration ("SSA").

**I.   OVERVIEW OF THE CASE**

The above-captioned case is Ms. A's second appeal of the denial of benefits. Ms. A originally filed applications for DIB and SSI on May 3, 2019, alleging disability beginning June 10, 2006. (Administrative Record 16; hereinafter "AR"). She was denied

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.
[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.

initially, on reconsideration, and after a hearing before an administrative law judge ("ALJ"). (*Id.*). The ALJ issued an unfavorable decision on October 26, 2020. (AR 13). Ms. A then requested further review of the ALJ's decision, and the Appeals Council denied this request on April 23, 2021. (*see* AR 1). Thus, the ALJ's decision became the final decision of the Commissioner. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Ms. A then filed suit in this court on June 21, 2021, under the cause *Arnett v. Commissioner of Social Security*, case no. 1:21-cv-240-WCL. The Court affirmed the Commissioner's decision on June 6, 2022. Ms. A appealed. [*See* DEs 25, 26 in 1:21-cv-240-WCL]. On appeal, the parties jointly moved to remand, and Ms. A's case was then remanded for further administrative proceedings on March 6, 2023. [DEs 34, 36 in 1:21-cv-240-WCL]. On remand, the ALJ was ordered to "further evaluate the claimant's alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 C.F.R. 404.1529 and Social Security Ruling 16-3p)." (AR 3102). The ALJ was also "to give further consideration as to whether the claimant has a medically determinable impairment or combination of impairments that is severe (20 CFR 404.1520(c), 404.1522, and Social Security Rulings 85-28 and 16-3p)." [*Id.*] Finally, the ALJ was also ordered to give "greater consideration to SSR 14-1p . . . with respect to chronic fatigue syndrome." [AR 3103].

The ALJ then issued another unfavorable decision on April 30, 2024.[3] (AR 3099). This decision was considered the final decision of the Commissioner. *See* 20 C.F.R.

---

[3] The ALJ dismissed Ms. A's SSI application and returned it for an initial medical determination. (AR 3102).

§404.984(a)("[W]hen a case is remanded by a Federal court for further consideration and the Appeals Council remands the case to an administrative law judge, or an administrative appeals judge issues a decision pursuant to § 404.983(c), the decision of the administrative law judge or administrative appeals judge will become the final decision of the Commissioner after remand . . . .").

On August 15, 2024, Ms. A initiated the above captioned action to appeal the denial of her application on remand. The Court has jurisdiction under 42 U.S.C. § 405(g).

## II.     APPLICABLE STANDARDS

### A.     Disability Standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations of: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can

3

perform his past relevant work based on his Residual Functional Capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 4041520; 416.920.[4] The claimant bears the burden of proof at every step except Step Five, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

### B.    Standard of Review

The Court reviews disability decisions by the Commissioner pursuant to 42 U.S.C. § 405(g). But this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary

---

[4] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

4

sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of no disability, however, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)(citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

### III.    DISCUSSION

#### A.    Summary of the ALJ's Decision Denying Benefits

Ms. A's telephone hearing on remand took place on October 3, 2023. Ms. A appeared telephonically and was represented by an attorney. (AR 3102). On April 30,

5

2024, the ALJ issued a written decision finding that Ms. A was not disabled from the alleged onset date of June 10, 2006, through December 31, 2011, the date last insured, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520. (AR 3106).

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. A had not engaged in substantial gainful activity since her alleged onset date of June 10, 2006. (20 C.F.R. § 404.1571 et seq., and § 416.971 et seq.). (*Id.*).

At Step Two, an ALJ's inquiry focuses on whether the claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ concluded that, since the alleged onset date of June 10, 2006, Ms. A suffered from the following severe impairments: chronic fatigue, insomnia, and obesity. (AR 3106). The ALJ thus concluded that these medically determinable impairments significantly limit Ms. A's ability to perform basic work activities as required by SSR 85-28. On the other hand, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.*, 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). The ALJ found that Ms. A had the following nonsevere impairments: hyperlipidemia, hyperhidrosis, traumatic brain injury, post-concussive syndrome, depression, and anxiety. (AR 3106).

6

The ALJ then concluded at Step Three that Ms. A does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The ALJ considered Section 1.00Q, 3.00O and/or 4.00I in Appendix 1 to Subpart p, 20 C.F.R. Part 404, and SSR 19-2p. Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. A can perform her past relevant work based on her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ concluded that Ms. A retained the RFC to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a): "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

7

Based on this RFC, at Step Four, the ALJ found that Ms. A was unable to perform her past relevant work as a physical therapy aid and counselor. (AR 3115). Accordingly, the ALJ moved on to last step in the five-step sequential analysis to determine whether Ms. A could perform other work.

At Step Five, the burden of proof shifts to the Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant number in the national economy that [the claimant] can do, given h[er] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2); *see also Liskovitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). The ALJ found that, while Ms. A could not perform any past relevant work, because she retained an RFC for the full range of sedentary work, there are jobs in significant numbers in the national economy that she can perform. (AR 3115, 3116).

Finding that Ms. A could make an adjustment to other work that existed in significant numbers in the national economy, the ALJ determined that Ms. A was not under a disability, as defined in the Act, from June 10, 2006, through the date of the ALJ's decision. (AR 3116).

  **B.**  **Issues for Review**

Ms. A makes two arguments in support of remand. First, Ms. A contends that the ALJ failed to consider her mild limitations in the four areas of mental functioning when assessing Ms. A's RFC for the full range of sedentary work. Next, Ms. A contends that the ALJ failed to properly consider an opinion from Ms. A's treating physician and failed to consider other evidence contrary to the decision, such as Ms. A's

8

hypopituitarism diagnosis, an MRI of her brain, a neuropsychic evaluation, and Ms. A's use of a service animal.

In response to the first argument, the Commissioner contends that mild limitations found in the areas of mental functioning do not necessarily mandate any mental limitations in the RFC. The Commissioner thus argues that substantial evidence supports the ALJ's determination that Ms. A did not require mental RFC limitations. In response to Ms. A's second argument, the Commissioner contends that the ALJ reasonably considered the statement from Ms. A's treating physician and that the remaining evidence cited by Ms. A was from 2018 and 2019—more than seven years after her date last insured—and Ms. A failed to explain how this evidence is relevant to the period considered.

As explained below, the Court finds that the ALJ did not address Ms. A's mild limitations in the four areas of mental functioning when determining Ms. A's RFC. Without any discussion as to Ms. A's mild mental limitations in the RFC assessment, the Court is unable to trace the path of the ALJ's reasoning to determine whether the ALJ considered the totality of her limitations. As such, based on Ms. A's first argument, remand is appropriate.

    **C.    Discussion**

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. "A 'regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* The RFC is the *most* someone "can do despite their

9

mental and physical limitations." 20 C.F.R. § 404.1545(a)(1) and § 416.945(a)(1); SSR 96-8p(5) (emphasis added). A claimant's RFC must include limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). This "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). As stated, Ms. A contends that the ALJ included no analysis that he considered her mild limitations in the four areas of mental functioning when the ALJ crafted her RFC. The Court begins by considering the ALJ's discussion of Ms. A's mental impairments.

The ALJ found that Ms. A's medical determinable impairments of depression and anxiety are nonsevere. (AR 3106). To make this finding, the ALJ used a "special technique" to evaluate Ms. A's mental impairments at steps two and three of the five-step evaluation. *See* SSR 96–8p, 1996 WL 374184. The special technique determines whether a claimant has a medically determinable mental impairment and whether that impairment causes functional limitations. *See* 20 C.F.R. § 404.1520a.

First, the ALJ evaluates the claimant's "pertinent symptoms, signs, and laboratory findings" to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). If the claimant has a medically

10

determinable mental impairment, then the ALJ rates[5] the degree of functional limitation in four broad areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* § 404.1520a(c)(3). These four broad functional areas of mental functioning are known as the "B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq. When analyzing the Paragraph B criteria, the ALJ must incorporate "a specific finding as to the degree of limitation in each of the functional areas." *Id.; see also Craft*, 539 F.3d at 674–75; *Timothy H. v. Kijakazi*, No. 20 C 581, 2022 WL 4079433, at *3 (N.D. Ill. Sept. 6, 2022). The ALJ's analysis must cite evidence that supports his conclusion for each functional area. *Timothy H.*, 2022 WL 4079433, at *3.

    Here, the ALJ found that Ms. A has a mild limitation in each of the four areas— meaning that Ms. A's "functioning in [each] area independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(F)(2)(b). In making this finding, the ALJ cited considerable evidence regarding Ms. A's anxiety and depression as part of his discussion at Step Two. The ALJ acknowledged that, during Ms. A's first hearing, she testified that she experienced symptoms that resulted in a loss of motivation, poor memory, and fatigue. (AR 3107). The ALJ also noted that this testimony was consistent with her testimony at the second hearing, where Ms. A also testified that she struggled with fatigue, insomnia, and other mental health symptoms. (*Id.*).

---

[5] These functional areas are rated on a five-point scale of none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).

11

The ALJ also noted that Ms. A reported "intermittent mental health symptoms" during the relevant period and that her mental status examinations were "generally unremarkable." (*Id.*). The ALJ observed that there were instances in the record where Ms. A had presented as sad and tearful, and had also reported symptoms from her depression and anxiety that included suicidal ideation—caveating the latter by referencing evidence that Ms. A had reported she had no plan to act on it. (*Id.*). But the ALJ also observed that there were times when Ms. A denied any mental health symptoms, when she described her depression as "stable and well controlled," and when she rated her symptoms as only 2-3/10 or 1/10. The ALJ discussed that even when Ms. A presented as "mildly anxious and appeared preoccupied with limitations and etiologi[es] related to her chronic fatigue" Ms. A was still "well groomed, calm, cooperative, engaging, and exhibited good eye contact, an appropriate affect and speech, a logical and sequential thought process, no hallucinations or delusions, no memory disturbance, average intellect an appropriate insight and judgment, and no suicidal or homicidal ideation." (*Id.*). The ALJ also observed that for much of the relevant period, she was only participating in counseling or medication management. (*Id.*). The ALJ likewise noted that Ms. A did not seek out mental health treatment until August 2012, six months after past the date last insured. (*Id.*).

The ALJ also discussed opinion evidence as part of this determination, stating that "state agency consultants opined [Ms. A] had mild limitations in the B criterion, further opining that based on the medical evidence in the record, her psychiatric limitations were not significantly limiting." (*Id.*). The ALJ found these opinions

12

"persuasive to the extent it found [Ms. A's] mental impairments were nonsevere" explaining how this finding is consistent with the overall record. (*Id.*)

As stated, Ms. A contends that, despite this discussion at Step Two, the ALJ failed to explain how the RFC accommodates her mild limitations in all four areas, nor did the ALJ explain why Ms. A's mild limitations did not require any limitations in the RFC. Indeed, "[a]s a general rule, . . . the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This includes "limitations that arise from [all] medically determinable impairments, even those that are nonsevere." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). But here, as Ms. A contends, the ALJ's RFC determination concludes by stating only that: "[i]n sum, [Ms. A]'s obesity, chronic fatigue, and insomnia would limit [her] to a full range of sedentary work"—suggesting that Ms. A's mild mental limitations were not considered when determining her RFC. (AR 3115). "While a mild . . . limitation in an area of mental functioning does not *necessarily* prevent an individual from securing gainful employment, . . .the ALJ must still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC." *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017) (emphasis in original); *see also Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("A failure to fully consider the impact of non-severe impairments requires reversal.").

The Commissioner raises multiple arguments in response. The Commissioner contends that the ALJ "said enough to explain why he did not believe the record supported any mental limitations." [DE 21 at 10]. The Commissioner supports this by

13

citing to AR 3106 to 3108. [*See* DE 21 at 10, citing to "Tr. 3106-08"]. But this is the portion of the decision under Step Two, where the ALJ discusses the paragraph B criteria as part of the determination that Ms. A's depression and anxiety were nonsevere impairments. The findings at Step Two regarding the Paragraph B criteria "are not an RFC assessment." SSR 96-8p, 1996 WL 374184, at *4. "[T]he RFC analysis is not a substitute for the special technique, even though some of the evidence considered may overlap." *Craft v. Astrue, 539 F.3d 668, 675 (7th Cir. 2008).* Indeed, the ALJ said as much in the decision: [t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of the mental impairments at steps 2 and 3 of the sequential evaluation process." (AR 3108).

The subsequent RFC analysis must include "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . ." SSR 96-8p, 1996 WL 374184, at *4; *see also Powell v. Kijakazi*, No. 21-CV-01160-JES-JEH, 2023 WL 2653358, at *4 (C.D. Ill. Mar. 27, 2023). The ALJ also acknowledged this, concluding the discussion at Step Three by stating that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (AR 3108). But this statement could be read multiple ways. *See Anthony W. v. Kijakazi*, No. 20 C 6209, 2022 WL 1062334, at *3 (N.D. Ill. Apr. 8, 2022)(finding that this statement "causes confusion."). On the one hand, this statement

14

could mean that "the RFC was designed to incorporate the mild impairments identified at step 2, even though they were not specifically mentioned in the RFC." *Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011). It could also mean that the ALJ considered "the Step 2 limitations as part of the RFC analysis but found them to be too mild to warrant additional non-exertional restrictions." *Id.* In any event, "the promised 'more detailed assessment'"—which could have confirmed what the ALJ meant with this statement—"never arrived." *GLADIS B., Plaintiff, v. FRANK BISIGNANO, Comm'r of the Soc. Sec. Admin., Defendant.*, No. 24-CV-8130, 2025 WL 2712188, at *2 (N.D. Ill. Sept. 23, 2025). Without more, the Court is unable to discern what the ALJ meant here. Indeed, it could also be that this language "is mere boilerplate that the ALJ uses to conclude *any* Step Two evaluation addressing a claimant's mental impairments or limitations." *Judy D. v. Saul*, No. 17 C 8994, 2019 WL 3805592, at *4 (N.D. Ill. Aug. 13, 2019) (emphasis in original).

The Commissioner also contends that "mild ratings do not require or support any mental limitations" and that Ms. A has not provided evidence of any limitation that should have been included. [DE 21 at 8]. In support, the Commissioner cites to *Felts v. Saul*, 797 Fed. Appx. 266 (7th Cir. 2019) and *Morales v. O'Malley*, 103 F.4th 469 (7th Cir. 2024). In *Morales,* the Court affirmed the denial of benefits, finding that "[b]ased on this evidence, the ALJ reasonably determined that Morales's mental limitations were mild and did not warrant or require any functional limitations." 103 F.4th at 471. Moreover, in *Felts,* the Court likewise found that the ALJ had considered "the cumulative effect of his non-severe mental impairments." 797 Fed. Appx. at 269. Thus, both *Morales* and *Felts*

15

suggest that the ALJ addressed the claimant's limitations and explained why the limitations did not warrant any nonexertional limitations in the RFC. Indeed, while the ALJ need not include any mental limitations in the RFC, the ALJ must still consider these limitations in the RFC assessment. Here, the ALJ did not provide any explanation about Ms. A's mental limitations when formulating the RFC, so the Court cannot determine whether they were considered as part of the RFC assessment at all. *See Barbara S. v. Kijakazi*, No. 2022 WL 4244306, at *10 (S.D. Ind. Sept. 15, 2022)("The ALJ failed, however, to offer any analysis connecting any functional mental limitations found at Step Two and the RFC.")

To the extent that the Commissioner maintains that this was harmless error, the Court cannot agree. Here, the ALJ found that Ms. A retained an RFC for the full range of sedentary work. This spans all skill levels — skilled, semiskilled, and unskilled work. 20 C.F.R. § Pt. 404, Subpt. P, App. 2. And even "mild limitations in social functioning or concentration, persistence, or pace may preclude the ability to perform . . . skilled and semi-skilled work." *Cheryl C. v. Berryhill*, No. 18-cv-1443, 2019 WL 339514, at *3 (N.D. Ill. Jan. 28, 2019)(collecting cases); *see also David K. v. Kijakazi*, No. 20-CV-1743, 2022 WL 2757695, at *4 (N.D. Ill. July 14, 2022); *Julie J. v. Kijakazi*, No. 120CV01597SEBDLP, 2021 WL 4437587, at *2 (S.D. Ind. Sept. 28, 2021).

In sum, without further analysis from the ALJ, the Court is unable to trace the ALJ's reasoning to determine whether the ALJ accounted for Ms. A's mild mental limitations assessed at Step 2 in the RFC. Thus, consistent with other courts in this circuit, remand for further administrative proceedings is appropriate. *See, e.g., GLADIS*

*B., Plaintiff,* 2025 WL 2712188, at *2 (remanding case for failure to consider paragraph B limitations in the RFC assessment and referencing other cases that did the same); *Vandergraff v. Comm'r of Soc. Sec.*, No. 4:24-CV-44 JD, 2025 WL 2263127, at *6 (N.D. Ind. Aug. 7, 2025)("Without incorporating the other mental functioning limitations, the RFC assessment is incomplete."); *Lisa H. v. O'Malley*, No. 24-CV-0361-SMY, 2025 WL 274592, at *5 (S.D. Ill. Jan. 23, 2025); *Karen A. v. Kijakazi*, No. 1:21-CV-03076-MG-SEB, 2023 WL 2643235, at *5 (S.D. Ind. Mar. 27, 2023)("In this case, the ALJ concluded that Karen A. has mild mental functional limitations in three 'paragraph B' criteria areas but failed to consider how these limitations would affect her ability to sustain full-time work."); *Barbara S.*, No. 2022 WL 4244306, at *10.

As a final matter, the Court acknowledges that Ms. A has raised other issues in support of remand. The ALJ will have the opportunity to fully discuss and reevaluate her other allegations on remand. The Court need not discuss Ms. A's other arguments when the Court has identified a reason for remand.

### IV. CONCLUSION

For these reasons, the Court **REMANDS** this action to the SSA for further administrative proceedings consistent with this opinion.

**SO ORDERED** this 26th day of September 2025.

s/Scott J. Frankel  
Scott J. Frankel  
United States Magistrate Judge